UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW DAVENPORT                                        CIVIL ACTION

VERSUS                                                  NUMBER: 13-0505

ROBERT TANNER, ET AL.                                   SECTION: "A"(5)

**ORDER AND REASONS**

Presently before the Court[1] is the motion to dismiss of Defendant, Doctor Casey McVea, wherein he moves for the dismissal of the sole claim remaining in this case, namely, Plaintiff's Eighth Amendment claim for deliberate indifference to his serious medical needs. (Rec. doc. 53).[2] Plaintiff opposes Defendant's motion. (Rec. doc. 54). For the reasons that follow, it is ordered that Defendant's motion is granted and that Plaintiff's suit is dismissed.

The incident that precipitated this lawsuit was described in considerable detail in the Court's previous order and reasons disposing of Defendants' motion for partial dismissal and need not be repeated in full here. (*See* rec. doc. 51). For present purposes, the Court simply recalls that in connection with Plaintiff's transfer to administrative segregation following two positive drug-test results, he repeatedly refused jail officials' serial requests to submit to a visual body cavity search as was required by the applicable prison regulation governing such transfers. Subsequent to those refusals, Plaintiff was escorted to the Rayburn

---

[1]/ This case is before the undersigned upon the consent of the parties pursuant to 28 U.S.C. §636(c). (Rec. doc. 43).

[2]/ As a result of earlier motion practice, three Defendants, Secretary James M. LeBlanc of the Louisiana Department of Public Safety and Corrections, Nurse Wendy Seal, and EMT Jane A. Hillman, were dismissed from this lawsuit. (Rec. docs. 36, 35). Plaintiff's excessive force and unreasonable search claims against Doctor McVea and five other correctional officers from the Rayburn Correctional Center ("RCC") were subsequently dismissed on July 31, 2015. (Rec. doc. 51).

Correctional Center ("RCC") infirmary where a physical body cavity search was performed by Dr. McVea, who would later memorialize the circumstances surrounding the procedure that was performed for inclusion in Plaintiff's medical chart, as follows:

> I was summoned by Warden Bickham at approximately 7:15 a.m. to perform a body cavity search on the above named offender because he had refused a visual body search prior to being locked up on a contraband violation. I reported to the infirmary as instructed, and the above named offender was given a final opportunity to submit to a visual search which he refused. At approximately 8:00 a.m. the offender was physically restrained by security. At that time I inserted my gloved and lubricated index finger in the offender's rectum. I palpated no contraband and my finger was withdrawn. No trauma was noted to the sphincter and no blood was noted on the glove. The offender stated, "Well I feel gay, now." He immediately complained, "I feel like I am bleeding." I knew that this was a false complaint because I had just checked for the presence of blood. I released the offender to return to the cellblock.

Also included in Plaintiff's medical records is a "Health Care Information" form dated January 1, 2013 documenting a complaint of "post use of force" followed by a notation that "[n]o injuries [were] noted @ this time ... ambulating well per self." Subsequent to the search, Plaintiff was placed on standard suicide watch in light of his pre-search statements reflecting his desire to be so segregated in an admitted attempt to delay the prison disciplinary proceedings that would inevitably follow. As a result of the incidents of that day, Plaintiff was issued prison rules violations for possession of contraband and aggravated disobedience for disobeying the multiple verbal commands for him to submit to the visual body-cavity search. Although the contraband disciplinary conviction was ultimately overturned, the aggravated disobedience disciplinary conviction, for which Plaintiff lost 90 days of good time credits, remains extant.

The medical records that have been provided to the Court also contain a note from an RCC nurse that was generated on January 2, 2013 at 4:00 a.m. which indicates that Plaintiff was observed to be "[r]esting quietly in bed. Remains on SSW. Appears to be sleeping. Res. even + unlabored. NAD noted." On January 3, 2013, Plaintiff was downgraded from standard suicide watch to mental health observation. Pertinent to the motion *sub judice*, on January 3, 2013, a full five days after the incident in question, Plaintiff made a routine sick-call request for "rectum pain, neck pain" allegedly as a result of being searched on January 1, 2013. The examining EMT's record from that date indicates that "[n]o injuries were noted, neck has no swelling, no bruising, good range of motion." In light of those negative findings, the EMT opined that no treatment was warranted at that time, noting Plaintiff's statements that "he need[ed] his Ultram that has been D/Ced." The EMT's findings and Plaintiff's chart were then provided to and reviewed by Dr. McVea, who issued no treatment orders.

On January 8, 2013, Plaintiff made an emergency sick call for an "alleged assault." Notwithstanding his complaints of neck and rectum pain, the attending nurse found "[n]o obvious bruising or edema noted at this time to neck or upper back." Plaintiff refused a visual assessment of his rectum purportedly secondary to complaints of pain, contemporaneously executing a separate form which released the Department of Corrections "… from any liability for any harm that may result from this refusal of treatment." Plaintiff was given Tylenol for pain relief and the examiner's findings were reviewed by Dr. McVea, who issued no additional treatment orders.

On January 10, 2013, Plaintiff made another routine sick call, complaining of dry skin and the need for more and/or stronger pain medication. Plaintiff was evaluated by an EMT who observed no dry skin on his legs and advised him to keep the affected areas clean and

3

to make sick call again if his problems persisted. The examination results were once again provided to Dr. McVea, who concurred with the EMT's findings that no further treatment orders were called for at that time. A "CCV MR" was scheduled before Dr. McVea for January 15, 2013 (which was subsequently cancelled) and a one-year prescription for Vasotec, a high-blood pressure medication, was ordered. A "CCV F/U 10/31/12" that was scheduled before Dr. McVea for January 30, 2013 was also cancelled and treatment was deferred to "ortho." Also on January 30, 2013, Plaintiff made routine sick call complaining of neck pain secondary to the search on January 1, 2013. A physical examination was performed by an EMT who documented "[n]o bruising or discoloration noted Full ROM," with no obvious injury. The impression was "[n]ormal exam." Those findings were reviewed by Dr. McVea, who issued no treatment orders and initiated disciplinary proceedings against Davenport for a violation of Rule 15(a), malingering, for making three sick calls "(1/6, 1/8, 1/30) with little or no medical merit." For that violation, Plaintiff would ultimately be stripped of 60 days of good-time credits.

On February 10, 2013, Plaintiff made yet another routine sick call request for neck and rectum pain and, for the first time, right hand pain in connection with the search on January 1, 2013. The examining EMT remarked that Plaintiff "ha[d] been seen about this several times." Upon physical examination, Plaintiff had a full range of motion to the neck and hand with no swelling, bruising, edema, or fracture noted. The impression was an absence of objective findings. Once again, the examiner's results were provided to and reviewed by Dr. McVea, who issued no treatment orders and referred Plaintiff for a further Rule 15(a) violation.

On February 19, 2013, Plaintiff made another routine sick call request for dental pain in the form of sensitivity to the bottom left side of his mouth for the previous three days. An assessment by the attending EMT revealed what appeared to be a broken tooth and possibly an infection. The recommendation was to refer Plaintiff to the dental department for further evaluation, a recommendation that was concurred with by Dr. McVea, who initiated the necessary paperwork. Plaintiff made a routine sick call request on March 3, 2013, this time complaining of left ear pain and a sore throat. Upon examination, a buildup of ear wax was noted as was a red and irritated throat. Plaintiff was provided Debrox ear drops and Chloraseptic spray and was advised to increase his fluid intake. Once again, the examiner's findings and recommendations were reviewed by Dr. McVea who found the "[t]reatment appropriate."

On March 6, 2013, Plaintiff made yet another routine sick call request for neck and right hand pain as well as pressure on the rectum when urinating.[3] Plaintiff advised the attending EMT that the pain medication that he was taking was not effective. He also reported right hand tenderness when asked but there was no swelling or tenderness and a good range of motion. Plaintiff was furnished a quantity of Tylenol to take as needed and the EMT's findings were provided to Dr. McVea for his review. After doing so, the doctor issued no further treatment orders and again referred Plaintiff for an additional Rule 15(a) violation.

---

[3] As reflected by the records that have been provided to the Court, in the meantime Davenport had received a disciplinary conviction for an aggravated sex offense (obscenity) after he was observed on February 22, 2013 by the electrical foreman of the RCC maintenance department masturbating while sticking a finger in his anus. As a result of this disciplinary conviction, Plaintiff lost another 90 days of a good-time credits.

The sole remaining claim in this lawsuit is that Dr. McVea exhibited deliberate indifference to Plaintiff's serious medical needs because he failed to personally examine Plaintiff on January 6, January 8, January 30, February 10, and March 6, 2013. (Rec. doc. 5, pp. 15-16). In order to prevail on such a claim, an inmate must demonstrate that prison officials were deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet, *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), one that has been equated with "subjective recklessness" as that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (footnote omitted). If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful or because pain persists despite the treatment. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest County Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). That an inmate's medical care "… may not have been the best money could

6

buy" is insufficient to establish a constitutional violation, *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992), and the failure to provide a specialist in the field of an inmate's choosing does not, in and of itself, state a claim of deliberate indifference. *Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986).

Plaintiff alleged in his amended complaint that Dr. McVea was deliberately indifferent to his serious medical needs because he did not personally examine Plaintiff on the five dates identified above. However, he now argues, in his opposition to Defendant's motion, that the doctor exhibited "… medical neglect … which resulted in deliberate indifference to plaintiff['s] medical problem, when plaintiff made several sick call[s] requesting to be seen by an outside doctor, due to plaintiff knowing that he was not going to get fair and just treatment from the one and only Doctor here at R.C.C. … when the same Doctor is a[] defendant." (Rec. doc. 54, p. 2). Notably, Plaintiff expresses no dissatisfaction with the medical oversight that was provided by Dr. McVea in the treatment of his dry skin, hypertension, dental problems, ear pain, and a sore throat. The pertinent medical records contain no requests from Plaintiff for outside treatment which, in any event, largely fall into the same category as inmates' requests to be seen by practitioners or specialists of their choosing. The five dates all preceded the date on which Plaintiff signed his complaint and he makes no specific allegation that the doctor was aware of the impending litigation. More importantly, however, "[i]t has been consistently held that an inmate who has been examined by <u>medical personnel</u> fails to set forth a valid showing of deliberate indifference to serious medical needs." *Gillis v. Goodwin*, No. 13-CV-2506, 2015 WL 3622675 at *3 (W.D. La. June 9, 2015)(citing *Norton*, 122 F.3d at 292; *Callaway v. Smith County*, 991 F.Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather ,*

*supra*)(emphasis added); *Sneed v. Michaels*, No. 06-CV-0383, 2009 WL 722285 at *4 (W.D. La. March 17, 2009). Treatment that has been provided by nurses or other such medical personnel has thus been found to be sufficient for constitutional purposes. *Id.* On each of the five occasions cited by Plaintiff, he was duly examined by medical personnel who recorded objective findings following physical examinations. Those findings were subsequently reviewed by Dr. McVea, who concurred with their accuracy and the treatment plan that was recommended. As Plaintiff does not directly challenge the accuracy of any of those objective findings, there is no basis upon which to conclude that the doctor's review and concurrence in them amounted to a constitutional violation. Indeed, the Fifth Circuit has found that a prison physician's <u>failure</u> to read attending nurses' notes was, at most, negligence and not deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.), *cert. denied* 528 U.S. 906, 120 S.Ct. 249 (1999). Simply put, contrary to Plaintiff's present assertions, RCC officials, including Dr. McVea, were not deliberately indifferent to his serious medical needs.

In addition, as a result of his third, fourth, and fifth requests for medical treatment following the search of January 1, 2013, Plaintiff received disciplinary convictions for malingering because he had no serious medical need as to which RCC officials had been deliberately indifferent. To succeed on his claim for damages here, Davenport would have to demonstrate that he did, in fact, have a serious medical need that was met with deliberate indifference. A victory on Davenport's §1983 damages claim would therefore necessarily imply the invalidity of his otherwise undisturbed disciplinary convictions. As explained by the Fifth Circuit sitting en banc in *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)(en banc), *cert. denied*, 525 U.S. 1121, 119 S.Ct. 1052 (1999), "[a] prisoner … cannot bring a §1983 action

seeking damages ... based on a 'conviction' until that 'conviction' has been ... declared invalid ... if a favorable judgment would 'necessarily imply' the invalidity of the prisoner's 'conviction' ..." *Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994)). "A 'conviction,' for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of a good-time credits." *Id.* (citing *Edwards v. Balisok*, 520 U.S. 641, __, 117 S.Ct. 1584, 1587 (1997)). As Davenport's disciplinary convictions for malingering remain unassailed, consideration of his deliberate indifference claim is barred by *Heck*. *Jackson v. Mizzel*, 361 Fed.Appx. 622, 625 (5th Cir. 2010)(consideration of failure-to-protect claim barred by disciplinary conviction for fraud (lying)); *Troquille v. Thomas*, No. 08-CV-0758, 2009 WL 3112141 at *3-4 (E.D. La. Sept. 25, 2009)(consideration of retaliation claim barred by disciplinary conviction for malingering). For all these reasons, it is ordered that Defendant's motion is granted and that Plaintiff's Eighth Amendment deliberate indifference claim against Dr. McVea is dismissed pursuant to Rule 12(b)(6) and 42 U.S.C. §1997e(c)(1). *See Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994)(claims that fall within the ambit of *Heck* are frivolous). Judgment will be entered dismissing this matter with prejudice.[4]

New Orleans, Louisiana, this 10th day of December, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[4] Rec. doc. 49 is dismissed as moot.